**COOPERATIVA AHORRO Y CREDITO AGUADA, Plaintiff,**

v.

**KIDDER, PEABODY & CO.; Paine Webber Incorporated; Ramon M. Almonte, Mayleen Gratacos, and the Community Property Partnership existing between them, Defendants.**

Civil No. 89–1706 (JAF).

United States District Court,
D. Puerto Rico.

Aug. 29, 1996.

---

Enrique Peral, Muñoz Boneta Gonzalez Arbona Benitez & Peral, San Juan, PR, for Plaintiff.

Fernando L. Gallardo, Woods & Woods, San Juan, PR, for Almonte & Gratacos.

Guillermo J. Bobonis, Bobonis, Bobonis & Rodriguez Poventud, San Juan, PR, for Paine Webber.

Nestor M. Mendez–Gomez, Jorge E. Perez–Diaz, Pietrantoni Mendez & Alvarez, San Juan, PR, for Kidder Peabody.

## OPINION AND ORDER

FUSTE, District Judge.

In our original opinion and order in this case, 758 F.Supp. 64 (D.P.R.1991), we stayed proceedings pending resolution of statute of limitations questions resolved in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Following *Lampf,* we dismissed the securities law claims as time-barred, 777 F.Supp. 153 (D.P.R.1991), and rejected plaintiff's motion for reconsideration, 799 F.Supp. 261 (D.P.R.1992). We now visit on remand by *Cooperativa de Ahorro y Crédito Aguada v. Kidder, Peabody & Co.,* 993 F.2d 269 (1st Cir.1993), the issue of whether or not plaintiff, Cooperativa de Ahorro y Crédito Aguada (Cooperativa), has properly availed itself of the doctrine of fraudulent concealment in its action against Ramón M. Almonte (Almonte) and his employers, Kidder Peabody & Co. (Kidder) and Paine Webber. Having received briefs on the availability of equitable tolling, we decide that Cooperativa, apprised of at least a possibility of fraud, failed to subsequently discharge its duty of due diligence, thus foreclosing its appeal to the equitable doctrine of fraudulent concealment. Accordingly, we grant defendants' motion for summary judgment.

## I.

### Facts

Cooperativa is allegedly run largely on a volunteer basis by ordinary people who cannot as a whole make great claim to financial sophistication. *See Docket Document No. 178, pp. 2, 3, 10.* During the relevant period, Mr. Manuel Rivera was administrator of Cooperativa's investments, Mr. Luis Feliciano was deputy administrator, and Ms. Evelyn López was comptroller. Investment decisions ultimately devolved upon Mr. Rivera and it was Mr. Rivera who investigated prospective investments. *Id., (Appended Deposition Testimony of Evelyn López of Aug. 21, 1995), pp. 23–26.* Mr. Rivera relied exclusively on the recommendations of Almonte, who at that time was a broker for Kidder Peabody. *Id., (Appended Deposition Testimony of Manuel Rivera of Aug. 30, 1995), pp. 32–33.* Though he had been at various times the president, vice-president, and treasurer of Cooperativa, still, at the time he made the purchases Rivera claims to have had not even the most rudimentary knowledge of the stock market. *Id., p. 40.* Indeed, he claims not even to have known what is a prospectus or to have understood the general relationship between risk and return. *Id., pp. 60, 87.*

So it was that, when Cooperativa's broker, Almonte, recommended the purchase of junk bonds as a low-risk, high-return investment, Rivera took the bait and swallowed deep, purchasing $4.8 Million of Drexel Burnham Lambert High Income Trust Securities. The bonds were insured for a total of $10,000,000, but, unbeknownst to plaintiff, carried a call provision by which the trustee could liquidate the bonds when the market price of the securities dipped too far below book value. *Docket Document No. 178, (Exhibit B, Report of Alfonso Fernández, Jr., of Sept. 8, 1995), p. 3.* Plaintiff alleges that defendant Almonte deliberately concealed the associated risks both at the time of sale and as the securities began to decline in market value. At all times, claims plaintiff, Almonte represented the securities to be risk-free bonds in companies of only the highest caliber.

Shortly after purchase, plaintiff received coupons reflecting the purchase and promising prospectuses under separate cover. When the promised prospectuses did not arrive, plaintiff, allegedly still having no clue to the stock market, made no effort to secure copies of the prospectuses. *Id., (Deposition Testimony of Alfonso Fernández, Jr., of Oct. 13, 1995), pp 45–46.* Almost immediately after purchase, the securities began to decline in market value, though, as plaintiff claims, the market price did not appear in public price listings. *Id., (Exhibit B, Report of Alfonso Fernández, Jr., of Sept. 8, 1995), p. 7.* Annual review by auditors suggested that these securities had a AAA rating, but that plaintiff should review each such investment carefully to avoid future loss. *Docket Document No. 155, (Exhibit 10C), p. 3.*

A few weeks after receiving a July 29, 1987, letter informing Cooperativa that the

market price had fallen fully ten percent below the purchase price, Rivera finally called Almonte to find out why the securities had fallen in value so precipitously. *Docket Document No. 178, (Deposition Testimony of Manuel Rivera of Aug. 30, 1995), p. 101.* Almonte assured Rivera that the bonds would regain their value by the time of maturity and that, because they were fully insured, plaintiff need not worry for its principal. *Id., pp. 101–02.* Allegedly still without clue to the stock market and still without prospectuses, plaintiff did not realize that its securities were the high-yield, high-risk junk bonds about which the mass media had begun to report trouble as early as 1985. Indeed, so clueless does Rivera now allege himself to have been, that even after the stock market crash of October 1987, he still did not recognize that he had heavily invested Cooperativa in the same variety of junk bonds for which the market had collapsed most completely. Plaintiff, allegedly lulled into a false sense of security by Almonte's assurances, held on to its junk bond securities until the market price dipped so low that the trustee exercised its call option. Plaintiff alleges to have lost nearly $780,000 in principal. *Docket Document No. 7, p. 14.*

Kidder now alleges, in its motion for summary judgment, that in bringing its Rule 10b–5, 17 C.F.R. § 240.10b–5 (1995), claim in December 1989, plaintiff exceeded the applicable two-year statute of limitation. Codefendants Almonte and Paine Webber have joined Kidder's motion. Plaintiff responds that, by operation of the doctrine of fraudulent concealment, the two-year statute of limitation had been tolled until some time after December 1987.

## II.

### Applicable Law

■ The Court of Appeals for the First Circuit has adopted the doctrine of fraudulent concealment, which holds the statute of limitations in repose until an investor, in the exercise of reasonable diligence, discovered or should have discovered the alleged fraud. *Cook v. Avien, Inc.,* 573 F.2d 685, 695 (1st Cir.1978). As the court explains in *Maggio*

*v. Gerard Freezer & Ice Co.,* 824 F.2d 123 (1st Cir.1987),

> "storm warnings" of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner, and his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud. We have recently emphasized, moreover, that whether a plaintiff should have discovered the fraud "is an objective question" requiring the court to "determine if the plaintiff possessed such knowledge as would alert a reasonable investor to the possibility of fraud."

*Id.,* at 128 (citations omitted). If the plaintiff received such "storm warnings," then the court must determine whether or not plaintiff exercised due diligence in determining whether or not it had been the victim of fraud. As the court explains,

> the determination of whether a plaintiff actually exercised reasonable diligence requires a more subjective inquiry focusing upon the circumstances of the particular case, including the existence of a fiduciary relationship, the nature of the fraud alleged, the opportunity to discover the fraud, and the subsequent action of the defendants.

*Id.* Where the facts, even as alleged by plaintiff, demonstrate that plaintiff received storm warnings prior to the two-year statute of limitations and subsequently failed to diligently investigate the possibility of fraud, the court may grant summary judgment in defendant's favor. *See, e.g., Maggio,* 824 F.2d 123 (1st Cir.1987).

## III.

### Analysis

#### A. *Storm Warnings*

■ Plaintiff alleges not to have received information—the so-called "storm warnings"—that would have put a reasonable investor on inquiry or discovery notice as to the possibility of fraud. Though allegedly unaware that Cooperativa's securities were of the variety about which there had been an ongoing storm of media coverage, we believe that, by August 1987, Rivera had sufficient

facts by which a reasonable investor would be alerted to the possibility of fraud.

In light of Almonte's attestation to the high quality of the corporations that had issued the securities of which the trust was composed, the ten percent drop in market value below the purchase price would alone have alerted a reasonable investor to the possibility of fraud. The contradiction between Almonte's claim that the bonds were entirely risk-free and the suggestion of Cooperativa's auditors that it carefully review even its AAA investments to avoid losses, might also have suggested that something was amiss.

In combination with the drop in market value, the fact that Cooperativa had still not received the promised prospectuses would also have alerted a reasonable investor to the possibility of fraud. Indeed, the fact that these securities did not appear in media price listings might have suggested that these were not stocks for the average investor. And, though Rivera claims to have been oblivious to these facts, nonetheless, he had grown sufficiently concerned with the facts of which he was aware to call a meeting with Almonte. We conclude, therefore, that not only would a reasonable investor have been alerted to the possibility of fraud, but Rivera, however unreasonable an investor he claims himself to have been, had actually observed and heeded the "storm warnings."

### B. *Due Diligence*

 As in *Maggio* and *Cook,* plaintiff relies heavily on the subjective nature of the "reasonable diligence" test to justify its delay in discovering the alleged fraud. In particular, plaintiff contends that, because there existed a fiduciary relationship between Cooperativa and Almonte and because Rivera allegedly lacked even a modicum of financial sophistication, plaintiff reasonably relied on the assurances of Almonte. Even were we to accept these allegations as true, we nonetheless conclude that plaintiff has failed, as a matter of law, to show that it exercised due diligence in discovering the alleged fraud.

 We understand the Court of Appeals for the First Circuit to have resolved that, as a proposition of law, blind faith in the assurances of an investment advisor does not constitute due diligence, even where the advisor owes the plaintiff a fiduciary duty of truthfulness, when common sense indicates that the advisor has a motivation to dissemble the truth. *General Builders Supply Co. v. River Hill Coal,* 796 F.2d 8, 12–13 (1st Cir.1986). Here, as in *General Builders,* a reasonable person would easily recognize that even had Almonte "innocently misrepresented" the riskiness of the investment, Almonte "might try to cover himself in the hope that the investment situation might turn around later, and that their money and his reputation would be saved." *Id.* at 12. And yet, Rivera did essentially nothing more than rely on just such assurances.

Though Rivera and his subordinates at Cooperativa may not have had the financial sophistication to discover the fraud on their own, realizing their own lack of financial sophistication, we might, at least, expect them to have sought a second opinion from another broker on the quality of the securities they had purchased. Plaintiff would undoubtedly point to the information provided by its auditors as just such a second opinion. Yet, Rivera, himself, acknowledges that he perceived an inconsistency between the auditor's report and the assurances of Almonte. *Docket Document No. 155, (Exhibit 4C, Deposition Testimony of Manuel Rivera of Aug. 31, 1995), pp. 229–30.* In resolving these inconsistencies in Almonte's favor, admittedly without the financial sophistication to do so, Rivera can hardly claim to have acted with due diligence. Moreover, the auditors' reports do not attest to the quality of the investment other than to re-state their rating. The reports also suggest that Cooperativa carefully review its investments— something that, despite its claims to the contrary, Cooperativa had never done and would not do until it was too late. This suggestion should in common sense also have indicated that it was not safe to rely on the auditor's report as a second opinion on the underlying quality of the Cooperativa's stock market investments.

Equitable tolling is not intended to insure the losses of those who would, under the

**740**

banner of ignorance, carelessly sacrifice themselves on the altar of fiduciary breach. Instead, we expect that, before they attempt to lean so heavily upon equity, self-proclaimed unreasonable investors must take some meaningful steps to ensure that they are not victims of their acknowledged gullibility. Had Cooperativa taken some minimum steps to reevaluate its investment, we would happily leave the matter of due diligence to the jury; but, as a matter of law, we cannot equate blind faith with due diligence where common sense would counsel greater caution.

### IV.

#### *Conclusion*

We conclude that plaintiff had received adequate "storm warnings" of the possibility of fraud by the time of the mid-August 1987 communication between Rivera and Almonte. By the applicable two-year statute of limitations, we should have expected plaintiff to file suit by mid-August 1989. Plaintiff did not file suit until December 28, 1989; accordingly, we deem plaintiff to have failed in its attempt to equitably toll the statute of limitations and, thus, we grant summary judgment in favor of the defendants. The complaint shall stand dismissed.

Having dismissed all claims raised under federal laws, we see no reason to retain jurisdiction over the pendent state law claims. Therefore, the state law claims shall be dismissed without prejudice to their renewal in state court.

**IT IS SO ORDERED.**