COOPERATIVA DE AHORRO
Y CREDITO AGUADA,
Plaintiff, Appellant,

v.

KIDDER, PEABODY & COMPANY, Paine Webber Incorporated, Ramon M. Almonte, Mayleen Gratacos and the property partnership existing between them, Defendants, Appellees.

No. 96–2282.

United States Court of Appeals,
First Circuit.

Heard Sept. 5, 1997.

Decided Nov. 12, 1997.

Enrique Peral, Hato Rey, PR, with whom Roberto Boneta and Munoz Boneta Gonzalez Arbona Benitez & Peral were on brief, for appellant.

Nestor M. Mendez–Gomez, San Juan, PR, with whom Pietrantoni Mendez & Alvarez was on brief, for appellee Kidder, Peabody & Company.

Maria Bobonis–Zequeira, San Juan, PR, with whom Harry E. Woods and Woods & Woods were on brief, for appellees Ramon Almonte and Mayleen Gratacos.

Before SELYA and BOUDIN, Circuit Judges, and YOUNG,* District Judge.

BOUDIN, Circuit Judge.

The present appeal arises out of a federal securities lawsuit filed by Cooperativa de Ahorro y Credito Aguada ("Cooperativa"). Cooperativa is a small, one-branch savings and loan "cooperative" located in Aguada, Puerto Rico. Between June and December 1986, Cooperativa purchased $3.5 million in Drexel Burnham Lambert "unit trusts," securities representing participations in several trusts whose assets were corporate bonds. The securities were purchased at the recommendation of Ramon Almonte, Cooperativa's broker at Kidder, Peabody & Co. ("Kidder").

According to Cooperativa, Almonte told it that the securities were a low-risk, safe and unspeculative investment, that the securities were not redeemable for another seven to ten years and that a steady stream of income at favorable interest rates could be expected. The securities were in fact backed by low-rated or unrated "junk" bonds bearing high interest rates; and if the value of the bonds fell drastically, the trustees had power to terminate the trusts. Allegedly, Almonte disclosed neither the risky character of the bonds nor the termination provision.

In the course of its 1986 purchases of the securities in question, Cooperativa received confirmation slips that stated that prospectuses were being forwarded under separate cover. No prospectus covering these securities ever arrived and Cooperativa did not request copies. Cooperativa's officers were admittedly unsophisticated in financial matters. Over the year following the purchases, the unit trusts declined substantially in value, but their market value was not reported in any public listing.

In June 1987, Almonte moved from Kidder to another brokerage firm, Paine Webber Inc. On July 29, 1987, Kidder sent Cooperativa an account summary indicating that the unit trusts had lost about ten percent of their value since Cooperativa's purchases. Kidder's letter said that it was prepared "to analyze these results in more detail and the present situation of your portfolio." Cooperativa did not reply but transferred its account to Paine Webber, following Almonte to his new brokerage firm.

During August 1987, Cooperativa's investment administrator did call Almonte to ask why the unit trusts had lost value. Almonte allegedly replied that such ups and downs were normal, that the securities would soon regain strength and that Cooperativa would continue to receive interest payments regardless of market value. The underlying bonds continued to decline in value until July 1989, when the trusts were liquidated by the trustee. Cooperativa alleges that it suffered a loss of about $780,000 in principal as a result of the purchases.

On December 28, 1989, just over three years after its last purchase of the securities in question, Cooperativa filed a suit against Almonte, Kidder, and Paine Webber. The only claims remaining in this case are claims under section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (1997). The defendants pled the statute of limitations and extensive litigation ensued addressed to that subject.

When the complaint was filed in 1989, federal courts applied the local statute of limitations to claims under section 10(b), but there-

---

* Of the District of Massachusetts, sitting by designation.

after the Supreme Court adopted a one-and-three-year limitations period for such claims. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). The district court then found Cooperativa's claims barred under this new rule and dismissed them. *See Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.,* 777 F.Supp. 153, 156 (D.P.R.1991). Congress then passed a new statute providing that local statutes of limitations should continue to govern suits filed *prior* to the Supreme Court decision, and allowing reinstatement of claims that had already been dismissed under the new Supreme Court rule.[1]

Cooperativa then moved to reinstate its section 10(b) claims, but the district court held that even if local law were applied the claims would be time-barred under Puerto Rico's two-year statute of limitations for blue-sky claims. 799 F.Supp. 261, 263 (D.P.R.1992) (citing 10 L.P.R.A. § 890(e)). On appeal, we remanded for further consideration because the district court had relied on evidence outside the pleadings in dismissing the claim. 993 F.2d 269 (1st Cir.1993), *cert. denied,* 514 U.S. 1082, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995). On remand, the district court reached the same conclusion on summary judgment, 942 F.Supp. 735 (D.P.R. 1996), and we now affirm.[2]

■■■ In securities cases, federal case law permits tolling for fraudulent concealment even where state law does not do so. The statute does not begin to run until "the time when plaintiff in the exercise of reasonable diligence discovered or should have discovered the fraud of which he complains." *Cook v. Avien, Inc.,* 573 F.2d 685, 694 (1st Cir.1978). But "'storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner ... and his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud." *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 128 (1st Cir.1987) (emphasis omitted).

The district court held that, by mid-August 1987, Cooperativa had reasonable notice of the possibility of fraud by Almonte and did not thereafter exercise due diligence in pursuing the issue. In reviewing this assessment, we take all reasonably disputed facts in the light most favorable to Cooperativa. *See J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1250 (1st Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 81, 136 L.Ed.2d 39 (1996). And we review *de novo* the district court's decision that the record, so viewed, nevertheless compelled a determination in favor of the defendants. *See Maggio,* 824 F.2d at 128.

The securities acquired by Cooperativa were generating a very generous interest rate—over 12 percent at a time when Cooperativa was paying its own depositors six percent; the confirmation slips and the title of the units themselves reflected this facet of the investment, using the phrase "high yield." Yet Cooperativa knew that within one year (and much less for some of the purchases), the market value of the investment had dropped by about $340,000 or ten percent of the original investment.

The gravamen of Cooperativa's claim in this case is that it had been assured by Almonte in 1987 that its investment was low-risk, safe and not of a speculative character. Notwithstanding that bond prices commonly fluctuate, the high interest rates coupled with the drastic short-term decline in value ought to have suggested to a reasonable investor the *possibility* that Almonte had not accurately described the investment. The possibility of fraud is buttressed by Almonte's failure to provide the promised prospectuses.

---

1. *See* Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, § 476, 105 Stat. 2236, 2387 (codified as § 27A of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa–1 (1997)) (superseding *Lampf*). The Act was recently held unconstitutional insofar as it purported to reopen prior final judgments, *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995).

2. Because we agree that the case should be dismissed, we need not reach the question whether the reinstatement of Cooperativa's dismissed claim was unconstitutional under *Plaut,* an issue neither side has briefed. *See Tirado–Acosta v. Puerto Rico National Guard,* 118 F.3d 852, 854 (1st Cir.1997).

Cooperativa says that it did ask Almonte for an explanation of the decline. But even an investor of ordinary judgment and experience can discern that there is some risk in limiting inquiry to the very broker who may have misled or even defrauded the investor. In this instance, moreover, there is no indication that Almonte provided anything more than bland generalities about market fluctuations and repeated reassurances that the investment was safe. This does not seem sufficient to dispel a reasonable suspicion of fraud.

Therefore, in August 1987, Cooperativa had "storm warnings" of fraud and, in the exercise of due diligence, was obliged to do something more than sit on its hands. It might, for example, have pursued Kidder's offer to assess the situation, Almonte no longer being associated with the firm; or it might have sought an expert opinion on this set of investments from a wholly independent party; or it might have made an effort through its own resources to investigate promptly the nature of the investment it made. It took none of these steps.[3]

As it happens, by the fall of 1987, adverse information about high-yield junk bonds from Drexel Burnham in particular would not have been hard to uncover. The extraordinary stock market plunge in October 1987 focused considerable press attention on both junk bonds and Drexel Burnham, turning a small trickle of earlier newspaper references into a swell. In any case, an analyst could quickly have identified the inaccuracy of Almonte's alleged description, based merely on the relatively poor ratings of the bonds underlying the trusts.

We need not decide whether the statute of limitations begins to run on the date the storm warnings appear or the later date on which an inquiring investor would through reasonable diligence have discovered the fraud. *Compare, e.g., General Builders,* 796 F.2d at 13 (suggesting the former), *with Maggio,* 824 F.2d at 129 (suggesting the latter). The time between the two dates in most cases is not likely to be long enough to affect the outcome. So it is here: even if the statute did not begin to run until the fall of 1987, *more* than two years elapsed between that point and late December 1989 when the suit was finally brought.

In reaching our conclusion, we give little weight to two other pieces of evidence. The district court thought that Cooperativa's responsibility to investigate was heightened because of letters from its own auditors, including ones in 1985 and 1987, warning that its aggressive investment program presented some level of risk and ought to be carefully scrutinized. There is force in Cooperativa's answer that these boilerplate warnings were not in any way specifically directed to the securities at issue in this case.

Conversely, Cooperativa is mistaken in invoking an opinion letter to it dated March 3, 1988, from another auditor. The opinion, apparently commissioned by Almonte himself, deals only with how Cooperativa might report its investments in long-term obligations and opines that they could still be carried at purchase price despite a decline in market value. The letter does not comment at all on the safety or riskiness of the securities here involved, and obtaining the opinion does not represent due diligence.

In sum, Cooperativa was on notice by mid or late summer 1987 that Almonte's alleged description of the securities might well have been inaccurate or even dishonest. By diligent inquiry, it could quickly have learned that the alleged statements were false. Thus the statute of limitations began to run no later than the fall of the 1987. Its suit, brought in December 1989, was therefore barred by Puerto Rico's two-year statute of limitations.

*Affirmed.*

---

3. Despite Cooperativa's claim to the contrary, the obligation of diligent inquiry exists whether or not Almonte is labeled a "fiduciary." *See Salois v. The Dime Savings Bank,* 128 F.3d 20, 26 n.11 (1st Cir.1997); *Maggio,* 824 F.2d at 129; *General Builders Supply Co. v. River Hill Coal Venture,* 796 F.2d 8, 12 (1st Cir.1986).