David B. HENDRICKS, Trustee, et al, Appellants,

v.

Grant THORNTON, Appellee.

No. 09–96–163 CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 16, 1997.

Decided June 25, 1998.

Rehearing Overruled July 29, 1998.

4. Tex. Civ. Prac. & Rem.Code Ann. Chapter 35 (Vernon 1997).

Jennefer Bruch Hogan, Holman, Hogan, Dubose & Townsend, Randy J. McClanahan, McClanahan & Clearman, Houston, Mark Louis Greenwald, Greenwald & Greenwald, San Antonio, Ruben Hope, Jr., Hope, Causey

& Schlacks, Conroe, Gilbert I. Low, Orgain, Bell & Tucker, Beaumont, Ernest Coker, Jr., Conroe, for appellant.

Susan Pavlica, Mayer, Brown & Platt, Houston, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

This appeal arises from a suit by 127 investors (appellants) against the accounting firm of Grant Thornton International (Grant), appellee. The appellants, many of whom are current or former professional athletes, were investors in government securities trading programs offered by an entity known as Hillcrest Securities Corporation, Inc. (Hillcrest); the trades, on which appellants lost thousands of dollars, were purportedly reviewed and verified for authenticity by Grant.

The investors sued Grant for multiple causes of action, including, but not limited to, fraud, aiding and abetting fraud, Deceptive Trade Practices Act (DTPA) violations, breach of contract, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, breach of warranty, securities laws violations, negligence, and negligent misrepresentation. Over the course of ten years, Grant filed various motions for summary judgment, eleven of which were granted by the trial court. Appellants now challenge the summary judgments on appeal. Also before us on appeal is Grant's cross point appealing the two motions for summary judgment granted in favor of the Hendricks brothers on Grant's counterclaims for contribution.

Along with other Hillcrest investors, Randal Hendricks and his brothers, David and Alan Hendricks, sued Grant for damages from losses sustained in the Hillcrest transactions. At the time of the filing of suit, the Hendricks brothers, doing business as Hendricks Sports Management, were also sports agents who represented professional athletes. The record reveals the Hendricks brothers negotiated professional contracts for their clients, prepared income tax returns, and gave advice on investments, business opportunities, personal financial planning, and tax planning. As compensation, Hendricks Sports Management typically received fees from their clients' investment ventures and a percentage of their professional sports contracts.

In 1985 David Hendricks, as trustee, filed the initial suit against Hillcrest and others; Grant was not among those initially sued. In the original suit, Hendricks alleged that Hillcrest both offered to sell and, in fact, did sell securities by means of a prospectus or oral communication which included an untrue statement of material fact, or which failed to disclose a material fact. Approximately one year later, on May 9, 1986, David Hendricks amended his petition, adding his brothers, Randal and Alan, and other Hillcrest investors as plaintiffs, and Grant Thornton as a defendant.

Appellants alleged they participated in trading programs, designed, offered, and underwritten by Hillcrest, which had represented the programs and strategies as being sound investments that would secondarily yield legitimate tax benefits. According to their petition, some of the appellants began participating in the program in 1981; others were added gradually up through 1984. Appellants also allege Hillcrest represented that the accounting firm, Grant Thornton, would audit the trading programs and appellants' accounts as part of a due diligence procedure in administering and monitoring the programs. Beginning in late 1981 or early 1982, (CRI68) Grant itself, according to appellants, made representations vouching for the viability and legitimacy of the securities even though Grant knew or should have known the information and representations were false. Subsequently, as alleged by appellants, the Internal Revenue Service (IRS) disallowed the tax benefits for the years 1982 and 1983, because the transactions were "bogus and fictitious." Appellants claim their aggregate losses were in the millions of dollars.

Grant's connection with Hillcrest began in 1982 when Grant performed certain audit and tax services, specifically the auditing of Hillcrest's financial statements for both 1982 and 1983. During those same years, Hill-

crest also asked Grant to prepare certain tax memoranda which discussed specific tax questions concerning Hillcrest's trading program. The tax memoranda, according to Grant, were never intended to be used as a marketing tool with prospective investors. Yet Hendricks obtained a copy of the tax memoranda and mailed the same to Hendricks' clients.

In its 1982 marketing brochures, Hillcrest listed Grant as a reference and invited potential investors to check on the reliability of Hillcrest Equities, Inc., Hillcrest Securities Corporation, Inc. and its principals by calling, among others, Alexander Grant and Co. [Grant Thornton]. The list of references in Hillcrest brochures included the following: John Latta, CPA, Alexander Grant & Company; and George Banks, CPA, Alexander Grant & Company. Appellants claim that, with Grant's knowledge, Hillcrest's 1983 marketing materials promised potential investors that Grant would verify the authenticity of the trades made by Hillcrest. One part of the question and answer section in the 1983 brochure reads as follows:

5. Are actual trades being made?

*Hillcrest Securities Corporation, Inc. executes all of its trades with other dealers. Alexander Grant and Company is required to visit dealers and evaluate these transactions in order to verify their authenticity.*

19. How can I check on the reliability of Hillcrest Equities, Inc., Hillcrest Securities Corporation, Inc. and its principals?

. . . .

*The auditing, taxes, and general accounting for Hillcrest Equities, Inc. and Hillcrest Securities Corporation, Inc. has been handled by the national firms of Alexander Grant & Co. and Pannell Kerr Forster.*

*Please feel free to call any of the references listed in our corporate brochure to check on the reliability of Hillcrest Equities, Inc., Hillcrest Securities Corporation, Inc. and its principals.*

According to appellants, Grant never verified the authenticity of the trades and thereby caused appellants to lose their tax benefits, as well as their investments.

■ At the outset, we note the trial court held two hearings on the motions for summary judgment. At the first hearing, five separate summary judgments were granted; the other six were disposed of in another hearing some months later. The orders granting those summary judgments recite that the trial judge considered, among other things, all the motions, the briefs, and the summary judgment evidence filed by each party. Based on this recital, we know the trial judge considered all summary judgment evidence before him at the time of the hearing and did not restrict himself in ruling on a particular summary judgment to only the evidence attached to that motion for summary judgment. *See* TEX.R. CIV. P. 166a(c). In our review of the points of error regarding the various motions for summary judgment, we likewise, consider the pleadings, deposition excerpts, affidavits, and other evidence on file with the court, including those in other summary judgment motions, as long as they are referenced in the summary judgment motion at issue. We acknowledge there are two lines of authority on this subject matter. However, we follow *Boeker v. Syptak,* 916 S.W.2d 59, 61–62 (Tex.App.— Houston [1st Dist.] 1996, no writ); *Dear v. City of Irving,* 902 S.W.2d 731 (Tex.App.— Austin 1995, writ denied); *Kotzur v. Kelly,* 791 S.W.2d 254, 257 (Tex.App.—Corpus Christi 1990, no writ). *See* TEX.R. CIV. P. 166a(c).

In brief, the trial court granted summary judgment in favor of Grant and against appellants on the following causes of action:

1. Grant's motion for summary judgment on appellants' negligent conduct and fiduciary duty claims on statute of limitation grounds;

2. Grant's motion for summary judgment on appellants' DTPA claims;

3. Grant's motion for partial reconsideration on a motion for summary judgment previously denied by the trial court. The motion for partial reconsideration was on the following grounds:

(a) breach of contract

(b) breach of fiduciary duty

(c) Texas securities claims

(d) Federal securities claims

(e) breach of warranty;

4. Grant's motion for partial summary judgment on reliance and causation as to thirty-two of the investors;

5. Grant's motion for summary judgment on appellants' claim of failure to maintain independence;

6. Grant's motion for summary judgment on appellants' claims under Sec. 12 of the Securities Act of 1933 and Sec. 33(A) of the Texas Securities Act;

7. Grant's motion for summary judgment on appellants' fraud, aiding and abetting fraud, conspiracy claims, and aiding and abetting fraud under § 33(F) of the Texas Securities Act;

8. Grant's motion for summary judgment on appellants' claims under Sec. 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5;

9. Grant's motion for summary judgment on appellants' claims under Sec. 17 of the Securities Act of 1933;

10. Grant's motion for summary judgment on limitations grounds for federal securities claims brought under Sec.12(1) and 12(2) of the Securities Act of 1933;

11. Grant's motion for summary judgment on appellants' claim for aiding and abetting a breach of fiduciary duty of another.

In addition to granting eleven summary judgments in favor of Grant, the trial court granted the Hendrickses' two summary judgment motions on Grant's counterclaims for contribution against Hendricks Management Company and Hendricks Sports Management. On appeal, the investors challenge the trial court's granting of the motions for summary judgment in fifteen points of error.[1] Grant, in turn, challenges through a cross point the two summary judgments granted in favor of the Hendricks brothers.

The summary judgment standard is well established. The movant must show (1) there are no genuine issues of material fact and (2) he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Summary judgment for a defendant is proper if the defendant disproves at least one element of each of the plaintiff's claims or establishes all elements of an affirmative defense to each claim. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). In determining whether summary judgment is proper, we must consider all the evidence in the light most favorable to the non-movant and resolve doubts in his favor. *Id.*

## DECEPTIVE TRADE PRACTICES CLAIMS

In point of error six, appellants contend the trial court erred in granting summary judgment in favor of Grant on appellants' DTPA claims. Tex. Bus. & Com. Code Ann. §§ 17.41 et seq. (Vernon 1987). The basis of Grant's motion is appellants' lack of consumer status under the DTPA. For a person to qualify as a consumer under the DTPA, he must meet two requirements. First, he must have sought or acquired, by purchase or lease, goods or services. Tex. Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987). Second, the acquired goods or services must form the basis of the complaint. *Melody Home Mfg. v. Barnes*, 741 S.W.2d 349, 352 (Tex.1987). The DTPA does not require the consumer to be an actual purchaser or lessor of the goods or services as long as the consumer is the beneficiary of them. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex.1997).

Appellants did not purchase "goods" or "services" from Grant under the definitions given in the DTPA. *See* Tex. Bus. & Com.Code Ann. § 17.45(1),(2) (Vernon 1987). Even where the activity complained of does not fall into either category, however, a number of Texas courts have conferred consumer status on plaintiffs in circumstances where the activity complained of was collateral to

---

1. We do not find that appellants raised, or in some cases argued, all eleven summary judgments on appeal. The claims for breach of contract and for violations of Sec. 17 of the Securities Act of 1933, Sec. 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 are not addressed on appeal and are waived. Tex.R.App. P. 74(f).

the acquisition of an intangible.[2] These cases generally involve the acquisition of such intangibles as loans, bank accounts, or franchise agreements. Securities, which are present in this case, are considered intangibles, not "goods" under the DTPA. *See Portland Sav. and Loan Ass'n v. Bevill, Bresler & Schulman Gov't Sec., Inc.*, 619 S.W.2d 241, 245 (Tex.Civ.App.—Corpus Christi 1981, no writ). Although the DTPA does not cover the purchase of intangibles, a plaintiff can nonetheless bring the acquisition of services associated with the intangible within the DTPA by alleging he would not have sought or purchased the intangible but for the collateral services offered along with those items. *Lochabay v. Southwestern Bell Media, Inc.*, 828 S.W.2d 167, 171–72 (Tex.App.—Austin 1992, no writ). *See also Herndon v. First Nat'l Bank of Tulia*, 802 S.W.2d 396, 398–99 (Tex.App.—Amarillo 1991, writ denied); *FDIC v. Munn*, 804 F.2d 860, 865 (5th Cir. 1986) (stating that the key principle in determining "consumer" status in DTPA cases involving intangible items is whether the purchased goods or services are an objective of the transaction [involving the intangible] or merely incidental to it).

The Texas Supreme Court recently adopted a similar test for the determination of consumer status. Whether a party is a consumer depends on the plaintiffs' relationship to the transaction, not on the relationship between the parties, and on whether the goods or services are an objective of the transaction or merely incidental to it. *Andersen*, 945 S.W.2d at 815; *see Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1996); *Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 500 (Tex.App.—Houston [14th Dist.] 1994, writ denied). The question for us then is whether in its motion for summary judgment Grant demonstrated as a matter of law that its accounting and auditing services regarding the Hillcrest transactions were merely incidental to appellants' purchase of the securities rather than an objective of the purchase.

In *Andersen*, the Texas Society of Certified Public Accountants (TSCPA), as amicus curiae, contended that a stock purchaser should not be considered a consumer of an accounting firm (Arthur Andersen) simply because a corporation (Ramteck II) paid the firm for an audit for the purchaser's (Perry Equipment's) benefit. Under that scenario, argued the TSCPA, any stock purchaser who reviews audited financial statements could bring a DTPA claim against the auditor because virtually every external audit benefits third parties. *Andersen*, 945 S.W.2d at 815. In a specific reference to the issue raised in the amicus curiae's argument, the Texas Supreme Court declared it would not adopt a ruling with such broad implications. Instead, the Court restricted its finding of consumer status to the narrow facts of the case. There, the audit by Andersen was rendered in the sale of a business (Maloney Pipeline) by Ramteck II to Perry Equipment (PECO); the buyer (PECO) required an audit of Maloney Pipeline before the sale could take place; the audit was specifically intended to benefit the buyer; Arthur Andersen was aware PECO had required the audit and would rely on its accuracy; and the accounting firm also knew the specific purpose for which the audit was conducted. Under those narrowly drawn facts, the Supreme Court found the buyer of the business to be a consumer of the accounting firm even though there was no accountant/client relationship.

In the instant case, summary judgment evidence reveals Grant performed tax, accounting, and auditing services for Hillcrest, as did Arthur Andersen for Ramteck II. Grant's name, along with many others, appeared in Hillcrest's marketing brochures as a reference regarding Hillcrest's reliability. Unlike the *Andersen* case, however, there is no evidence of any contract between the investors and Hillcrest which called for an audit to be performed before any securities would be purchased by the investors; and there is no evidence that an audit by Grant or verification of trades by Grant was specifi-

---

**2.** *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 564 (Tex.1984); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174–75 (Tex.1980); *Clary Corp. v. Smith*, 949 S.W.2d 452, 464 (Tex.App.—Fort Worth 1997, writ de-

nied); *Texas Cookie Co. v. Hendricks & Peralta, Inc.*, 747 S.W.2d 873, 876–77 (Tex.App.—Corpus Christi 1988, writ denied); *First Fed. Sav. & Loan Ass'n v. Ritenour*, 704 S.W.2d 895, 899–900 (Tex.App.1986, writ ref'd n.r.e.).

cally intended to benefit the investors. The summary judgment evidence establishes that Grant's services were incidental to the transaction, and the investors' evidence does not raise a fact issue indicating that those services were an objective of the transaction between Hillcrest and appellants. *See Kinnard v. Circle K. Stores, Inc.,* No. 04–96–00798–CV, 1998 WL 28105 (Tex.App.—San Antonio Jan.28, 1998, n.w.h.).

Appellants herein are not consumers under the DTPA. The trial court's summary judgment regarding the DTPA claims is affirmed. Point of six is overruled.

### FRAUD–RELATED CLAIMS

In point of error seven, appellants contend the trial court erred in granting appellee's motion for summary judgment on appellants' claims for fraud, aiding and abetting fraud, conspiracy to defraud, and aiding and abetting fraud under § 33(F) of the Texas Securities Act.[3] Points of error three, four, and five further contend that the trial court erred in granting summary judgment on claims not raised or addressed in appellee's motion and that the trial court erred in concluding that appellee's motions for summary judgment disposed of all of appellants' claims.[4]

In appellants' Fifth Amended Petition, on which this particular motion for summary judgment is based, appellants pleaded, among others, the fraud-related causes of action listed above, alleging various misrepresentations they claim Grant made in connection with the Hillcrest securities program. Those misrepresentations include the following:

(1) Through its tax opinion memoranda, Grant vouched for the viability and legitimacy of certain material tax aspects of the securities offered in the 1982–1984 Hillcrest programs;[5]

(2) Grant represented, and allowed others to represent, that it would verify the authenticity of the trades, but failed to disclose that it did not;

(3) Grant represented that the performance of its work would adhere to Generally Accepted Accounting Standards (GAAS) and Generally Accepted Accounting Procedures (GAAP), but failed to conduct the audits of Hillcrest in such fashion;

(4) Grant violated Rules 101, 102, 201, 203, and 502 of the Texas Code of Professional Conduct of Accountants by fraudulently and recklessly placing its own interests ahead of its professional obligations.

(5) Grant had conflicts of interest and lacked independence, as demonstrated by Larry Jobe, an accountant and tax partner with Grant's Dallas office, who allegedly invested with Hillcrest at the very time Grant was conducting an audit of Hillcrest.[6]

■ The causes of action on which Grant obtained the summary judgment addressed in point of error seven involve fraud, and all have the elements of scienter or intent to induce reliance. A fraud cause of action requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. *Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994). To obtain summary judgment, as noted above, the movant must either negate one of the elements of the cause of action or prove all the elements of an affirmative defense.

---

3. Tex.Rev.Civ. Stat. Ann. art. 581–33(F) (Vernon Supp.1998).

4. Appellants claim the trial court erred in granting summary judgment on § 33(F) of Texas Securities Act, because that cause of action was not raised in Grant's motion for summary judgment. We note that Grant's motion on the fraud-related claims did allege a summary judgment ground on § 33(F).

5. A review of the record reveals the motion for summary judgment on the fraud-related claims is directed at the tax memoranda prepared by

Grant for Hillcrest and at Hillcrest financial statements audited by Grant. As to the tax memoranda, appellants concede in their brief on appeal that their fraud claims are not premised on any allegation that the tax memoranda prepared by Grant contained false tax advice. Consequently, we do not consider it.

6. The investors allege that because of conflicts of interest noted above, Grant lacked independence from Hillcrest and thereby violated standards of professional conduct. (CR VIII, 1892)

*Grinnell,* 951 S.W.2d at 425. Choosing the former, Grant sought to negate, in regard to the fraud-related claims, the elements of (a) intent to induce reliance and (b) scienter—knowledge that the misrepresentation was false when made.

■ We initially address appellants' lack of independence issue. Grant filed a separate motion for summary judgment on lack of independence, which was based on the investors' allegations in the Fourth Amended Petition. Grant claimed in its motion that no cause of action for lack of independence exists in Texas. The trial court granted the motion dismissing the lack of independence cause "WITH PREJUDICE." Subsequent to the trial court's granting of said summary judgment, appellants filed their Fifth Amended Petition in which they again pleaded lack of independence—this time with a new set of facts. Issues determined in a partial summary judgment are final although the judgment is interlocutory. *Crumpton v. Mike Stevens, MGA,* 936 S.W.2d 473, 477 (Tex.App.—Fort Worth 1996, no writ). After an interlocutory summary judgment is granted, the issues it decides cannot be litigated further unless the trial court sets the judgment aside or the partial summary judgment is reversed on appeal. *Id.* We, therefore, overrule point of error seven regarding the lack of independence issue as appellants' arguments deal with the re-pleaded issue contained in their Fifth Amended Petition, and are silent as to the lack of independence issue pleaded in their Fourth Amended Petition.

■ Grant contends its evidence conclusively establishes the absence of intent to induce reliance and scienter, and, thus, summary judgment was proper. To negate the element of intent to induce reliance, Grant attached as summary judgment proof the affidavits of John Latta and George Banks, who, as partners in Grant, are unquestionably interested witnesses. Latta's affidavit addresses the tax memoranda issue, which, for the reasons explained above, we need not consider. Banks' affidavit, which concerns the audit reports, contains, among others, the following averments:

[N]either I, nor to my knowledge any other person at Alexander Grant, knew or expected that the reports of our audits of the Hillcrest financial statements were going to be shown to, or relied upon by, any Prospective Investors of any of the Exhibit A plaintiffs.... I had no reason to believe that any investor in the Hillcrest program had received a copy of an Alexander Grant report on any of Hillcrest's financial statements.... [N]either I, nor to my knowledge any other person at Alexander Grant, intended to deceive or defraud Prospective Investors or any of the Exhibit A Plaintiffs or to bring about, participate in, or aid and abet any fraud against Prospective Investors or any of the Exhibit A Plaintiffs.

■ A summary judgment may be based on uncontroverted testimony of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and "could have been readily controverted." TEX.R. CIV. P. 166a(c). The Texas Supreme Court has defined the phrase "could have been readily controverted" to mean the testimony at issue is of a nature which can be effectively countered by opposing evidence. *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). Banks' affidavit does not meet that standard. First, it includes statements based in part on information and belief. Second, it is not grounded in any sound evidence which can be effectively countered by opposing evidence. The affidavit simply concludes that neither he, nor to his knowledge, any other person at Grant, intended to induce prospective investors to rely on Grant's audits of Hillcrest financial statements. This type of evidence is merely a denial of intent. We conclude the mere denial of intent by an interested witness is not enough to negate the element of intent to induce reliance.

Grant relies on *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.,* 715 S.W.2d 408 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) for the following proposition:

The mere fact that it *should be* known that another will rely upon a misrepresentation does not, of itself, establish that the misrepresentation was made with the

*intent* to induce reliance. The "intent" element of a fraud action imports a significantly greater degree of purposeful conduct than does the "foreseeability" element of a negligence action. Apart from its argument that "foreseeability" of reliance establishes the requisite intent, Blue Bell adduced no summary judgment evidence tending to show that PMM intended to induce Blue Bell's reliance on PMM's representations. Accordingly, there was no genuine issue of fact raised as to this element of Blue Bell's cause of action for fraud.

*Id.* at 415 (footnote omitted). We do not disagree with the holding in *Blue Bell.* However, the burden is still upon the movant to first negate the element of intent to induce reliance, and we do not believe the affidavit does so.

▆▆ Issues of intent and knowledge are not susceptible of being readily controverted and are generally inappropriate for summary judgment. *RRR Farms, Ltd. v. American Horse Protection Ass'n, Inc.,* 957 S.W.2d 121, 132 (Tex.App.—Houston [14th Dist.] 1997, writ denied); *Bankers Commercial Life Ins. Co. v. Scott,* 631 S.W.2d 228, 231 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). Intent is a fact question uniquely within the realm of the trier of fact because it depends so much upon the credibility of the witnesses and the weight to be given to their testimony. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986). Beyond Banks' statement regarding intent, which is not readily controvertible, Grant offers no other evidence effectively negating intent to show reliance. Consequently, Grant did not negate that element of the fraud-related claims.

▆▆ Grant also attempted to negate the element of scienter with regard to Grant's audit[7] and tax work for Hillcrest, as well as appellant's claim regarding Grant's failure to verify the trades. According to Grant, the testimony of its accounting experts establishes that it performed its tax and audit work in accordance with appropriate standards. The affidavits of Grant's three accounting experts all bear that out, since each expert avers that Grant performed its audit and tax work for Hillcrest in accordance with GAAS and GAAP standards.[8] We conclude that if there is uncontroverted expert opinion that appellee's audit reports met GAAP and GAAS standards, such testimony negates the scienter element of the fraud-related causes of action—namely the allegation that Grant knew the audits were false when made or that they were made recklessly without any knowledge of the truth.

Since the affidavits of Ammerman, Bourland, and Howard, in effect, negated the scienter element, the burden then shifted to appellants to raise a fact issue regarding it. As summary judgment proof, appellants attached to their response the affidavit of James Cogan, certified public accountant, who opines that "[Grant] was reckless to issue its unqualified audit opinion of Hillcrest...." His opinion, however, does not indicate that the audits were false when Grant issued them or that they failed to conform to GAAP or GAAS. Moreover, his statement that they were issued recklessly is merely a conclusory one and does not state in what way or why their issuance was reckless. Rather than focusing on the audit reports, Cogan's affidavit instead focuses on Grant's

---

7. "'Auditing' is the process whereby the independent Certified Public Accountant conducts an examination of management's financial statements to determine whether the statements present fairly the financial information which they purport to convey. 'Generally Accepted Auditing Standards' are general standards of conduct relating to the auditor's professional qualities as well as to the judgments exercised by him in the performance of his examination and the issuance of his report. AICPA, Professional Standards, Statements on Auditing Standards No. 1, § 150.01." *Greenstein, Logan & Company v. Burgess Marketing,* 744 S.W.2d 170, 185 n. 2 (Tex. App.—Waco 1987, writ denied).

8. "'Generally Accepted Accounting Principles' (GAAP) establish guidelines relating to the process by which the transactions and events of a business entity are measured, recorded, and classified in accordance with a conventional format. GAAS [Generally Accepted Auditing Standards] thus differs from GAAP; the former involves how an auditor goes about obtaining information, while the latter involves the format in which to present the information." *Securities and Exch. Comm'n v. Arthur Young & Co.,* 590 F.2d 785, 789 n. 4 (9th Cir.1979).

failure to verify the trades, which, as pointed out repeatedly by appellants, is not the same fraud allegation as that concerning the audit reports. Cogan's affidavit fails to raise a fact issue regarding scienter. Therefore, Grant has negated one of the elements of fraud in connection with the audit reports.

■ Grant also attempts by way of footnote in its motion for summary judgment to negate the element of scienter in regard to transaction verification. In so doing, Grant points to George Banks' deposition testimony wherein he, in effect, states he was not aware prior to the latter half of 1983 that the trades were not being verified. His averment of his own lack of knowledge, however, does not negate the element of scienter. Whether or not he had personal knowledge regarding verification of the trades does not establish whether others at Grant knew of the lack of verification. Moreover, if he possessed such knowledge in the latter half of 1983, that fact, in the face of the 1983 Hillcrest brochures stating Grant was verifying the trades, is sufficient to raise a fact issue for appellants regarding scienter. Consequently, Grant has not negated the element of scienter or the intent to induce reliance regarding transaction verification. We, therefore, sustain point of error seven in part and overrule in part. Summary judgment on the fraud-related claims concerning the tax memoranda and audits is proper. Summary judgment on the fraud-related claim concerning the failure to verify the trades is improper; that claim is returned to the trial court. Our resolution of point of error seven also disposes of points three, four, and five.

### RELIANCE AND CAUSATION— THIRTY–TWO PLAINTIFFS

In point of error eight, appellants claim the trial court erred in granting appellee's motion for partial summary judgment on reli-

ance and causation grounds against thirty-two of the 127 plaintiffs. A review of the Fourth Amended Petition, on which Grant's motion for summary judgment is based, reveals the following causes of action: (1) fraud, (2) breach of warranty, (3) breach of contract/third party beneficiary to contract, (4) conspiracy to defraud, (5) negligence, (6) DTPA violations, (7) breach of fiduciary duty, (8) negligent misrepresentation, (9) aiding and abetting fraud, (10) aiding and abetting a breach of fiduciary duty [9], and (11) violations of the Texas Securities Act. According to Grant, either reliance or causation is an element of each cause of action in that petition. With that in mind, Grant in its partial motion for summary judgment sought to negate those elements in the following manner:

| *Reliance* | *Causation* |
| --- | --- |
| Fraud | / Negligence |
| Negligent misrepresentation | / DTPA |
| Civil conspiracy | / |
| Aiding and abetting fraud | / |
| Breach of fiduciary duty | / |
| Violations of Texas Securities Act | / |
| Breach of contract/3rd party beneficiary | / |
| Breach of warranty | / |

■ At the outset, we note that causation is an element of negligence, conspiracy to defraud, and the DTPA.[10] Appellant seeks to negate causation in the negligence and DTPA theories, but not in the conspiracy action. Reliance is an element of fraud, negligent misrepresentation, aiding and abetting fraud, and breach of express warranty. *See American Tobacco Co.*, 951 S.W.2d at 436. However, reliance is not an element of civil conspiracy, breach of fiduciary duty, violations of the Texas Securities Act, and breach of contract and/or third party beneficiary of a breached contract,[11] and, therefore, summary judgment is not proper on those causes of action. We are left then with the determination of whether Grant negated (1) the ele-

---

9. This cause of action will be addressed later in the opinion.

10. *See Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex.1996) (elements of negligence); *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 478 (Tex.1995) (elements of DTPA); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983) (elements of civil conspiracy).

11. *See Wright v. Christian & Smith*, 950 S.W.2d 411 (Tex.App.—Houston [1st Dist.] 1997, no writ) (elements of breach of contract); *Busse v. Pacific Cattle Feeding Fund # 1, Ltd.*, 896 S.W.2d 807, 814 (Tex.App.—Texarkana 1995, writ denied) (elements of Texas Securities Act violations); and *Watkins v. Williamson*, 869 S.W.2d 383, 387 (Tex.App.—Dallas 1993, no writ) (elements of breach of fiduciary duty).

ment of causation in negligence, and (2) the element of reliance in the causes of action for fraud, negligent misrepresentation, aiding and abetting fraud, and breach of warranty. We do not address the causation element in the DTPA cause of action, since we have already determined the investors are not consumers under the Act.

■ We begin with the element of reliance. Grant has urged, as to the thirty-two plaintiffs in question, that they did not rely on any representations made by Grant. In support of that premise, Grant attached deposition excerpts from each of the thirty-two as summary judgment proof.

According to Grant, twelve of the plaintiffs [12] could not have relied on any of Grant's representations, because the twelve testified they had never heard of Grant at the time they invested in Hillcrest. We do not find Grant's initial premise to be sound. Merely because an investor does not know the specific name of the firm which has made alleged misrepresentations does not mean the investor has not relied on those representations. That fact does not aid the investors in question, however. In reviewing the deposition excerpts, it is apparent to us the testimony of the twelve does not evidence reliance, but, in fact, negates reliance. The excerpts reveal the information received by the investors concerning the Hillcrest program came from conversations with the Hendricks brothers or their agents and from material sent to them by the Hendricks organization. If any reliance was shown, that reliance was on the Hendrickses and on materials they sent to the twelve. There is no indication in the record, however, of the contents of those materials or of the substance of the conversations with the Hendrickses. The materials are variously described by the twelve as "some papers" (Andujar), a brochure or prospectus (Garvin), a folder (Jackson), "written materials" (McGee, Schatzader, Smith), brochure and letter (Mason), and written information (Wallace). The summary judgment evidence regarding those twelve investors negates the element of reliance; appellants have not responded with evidence raising a fact issue on that element.

Grant next points to four of the thirty-two plaintiffs who, unlike the previous twelve, indicated they may have heard of Grant.[13] Birney and Bujnoch testified they had heard of Grant, but not prior to investing in Hillcrest. Gross indicated he was aware Grant was the "auditing firm" for the Hillcrest program. All four declared they became aware of the Hillcrest program through the Hendrickses. Although their testimony reveals they may have heard of Grant, there is no indication they relied on any representations by Grant or any other accounting firm concerning the transaction with Hillcrest. Their lack of knowledge regarding any representations negates the element of reliance. It was appellants' burden to raise a fact issue regarding the four investors' reliance on Grant's representations. This they did not do.

Nine plaintiffs [14] testified in deposition that they had heard of Grant; some had even received Grant's 1983 tax memorandum. Bennett specifically stated there was nothing in the information that he found important in making the decision to invest in Hillcrest. Hayes testified that seeing the name Grant in the brochure had nothing to do with his decision to invest. Blinka stated he could not remember anyone telling him anything about Grant in connection with Hillcrest and could not remember ever reading Hillcrest material related to Grant. Williams testified he read a brochure sent to him on the Hillcrest venture; however, there is no evidence of the contents of the brochure. Tim Wilson's understanding that Grant would handle

12. Joaquin Andujar, Victor Cruz, Mark Davis, Jerry Garvin, Robert Jackson, John Henry Johnson, Kenneth Kravec, Lindsey Mason, Tony McGee, Dan Schatzeder, David Smith, Jr., and Lois K. Wallace are the referenced twelve.

13. The four plaintiffs are David Birney (629,-1512), Glen Bujnoch (634, 1444), Greg Gross (639, 1542), and Atlee Hammaker (644, 1548).

14. The nine plaintiffs are Barry Bennett (651, 1499), Stanley J. Blinka (659,1516), Todd Christensen (662, 1521), Lester Hayes (667,1555), James Norris (672, 1631), Don Robinson (676, 1635), Matt Williams (679, 1707), Tim Wilson (685, 1716), and Robert Wine (693, 1755).

the trades occurred only after he invested in the program. Although Christiansen testified he made his investment decision based on materials he received by mail, there is likewise no evidence of the contents of the material. Neither Wine nor Robinson knew of any connection between Grant and Hillcrest. Robinson looked through a Hillcrest brochure he received from the Hendrickses, but did not read it. Neither did he read a letter from Randal Hendricks. Wine felt the information Alan Hendricks imparted to him was important, but that was not the reason he invested. There is no indication in the record of what that information was. Norris testified he invested in Hillcrest because of his discussions with Randal Hendricks and because of the information contained in the brochure which Hendricks sent to him. Norris stated he knew an accounting firm stood behind the investment and gave it some credibility. Nowhere does he or any of the other investors indicate Grant made any representations. Any representation regarding Grant was from a third party or from a Hillcrest document, with the exception of Grant's tax memoranda, which appellants concede contained no faulty tax advice.

Grant's summary judgment motion also directs us to four other plaintiffs[15] who, according to Grant, did not rely on any representations made by Grant. Waldemore read through the "big blue book", but cannot recall what was in it. He testified he talked with Randal Hendricks, read "that paper," and talked it over with his wife. Yost remembers he received a tax opinion which mentioned Grant and "looked through it." He testified concerning the "initial booklet" and the conversation he had with Alan Hendricks before he invested in 1983. The record does not indicate he relied on any representation by Grant. The same is true for Martz and Rosen. As revealed by the summary judgment proof, the representations concerning Grant came from third parties.

Finally, according to Grant, there were three plaintiffs whose understanding of the role that Grant was to play in Hillcrest was based entirely on what *others* represented to them.[16] Monge testified he had heard of Grant possibly before he made his investment, but his testimony gives no indication he relied on any representations made by Grant. Ken Bailey testified he knew Grant was an accounting firm for Hillcrest, and Grant had a duty to do an audit and advise him as an investor if there was anything wrong. His knowledge came from the Hillcrest brochure. Prior to investing, Bailey discussed with his accountant (not Grant) the fact that an "accountant firm had looked at this proposed transactions and apparently gave its blessings." Again, the reliance is based upon representations by third parties about Grant.

Heathcott also testified he relied on the representations of a third party. Specifically, he states that prior to his investment in 1982 he talked to Pete Palmer of Hillcrest who told him that Grant would provide a tax opinion and an audit. Like the other plaintiffs made the subject of this summary judgment, his reliance is upon representations by others about Grant.

Appellants contend the information communicated to them regarding Grant does not have to come directly from Grant. For that proposition, they rely upon *Shatterproof Glass Corporation v. James*, 466 S.W.2d 873, 880 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.). There the court expressly held:

[A]n accountant may be held liable to third parties who rely upon financial statements, audits, etc., prepared by the accountant in cases where the latter fails to exercise ordinary care in the preparation of such statements, audits, etc., and the third party because of such reliance suffers financial loss or damage.

The instant case is distinguishable from *Shatterproof Glass Corporation* and other cases citing it.[17] The representations here

**15.** Those plaintiffs are Randy Martz, Albert Rosen, Stanley Waldemore, and Ned Yost.

**16.** Those three plaintiffs are Ken Bailey, Donald Heathcott, and Isidro Monge.

**17.** For example, in *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 411 (Tex. App.—Dallas 1986, writ ref'd n.r.e.), the representations of the accountant which reached the third party relying on them were actually made by the accountant—*i.e.*, the accountant's report.

were not those of Grant. They emanated from Randal Hendricks, Pete Palmer of Hillcrest, Hillcrest marketing materials, and an accountant of one of the investors. We conclude that once Grant negated the element of reliance, as demonstrated by the deposition excerpts above, it was then appellants' burden to raise a fact issue concerning their reliance on *Grant's* representations. Their evidence does not do so.

In addition to deposition excerpts referencing unidentified brochures and other written material, appellants also rely on the affidavit of Randal Hendricks to raise a fact issue regarding reliance and causation. As with the deposition excerpts of the other investors, Randal Hendricks' affidavit reveals the source of Hendricks' information regarding Grant is not Grant, but Hillcrest. Hendricks declares he was informed by Pete Palmer of Hillcrest that Grant would be the accountant and auditor for Hillcrest and that Grant would be verifying the trades. Based upon Palmer's representations, Hendricks states he mailed the Hillcrest marketing materials to the investors who, according to Hendricks, relied upon them. Hendricks' statement in his affidavit concerning the investors' reliance is conclusory; no basis for that knowledge is given. We conclude his affidavit, based upon information from Hillcrest rather than Grant, does not raise a fact issue regarding reliance of the thirty-two plaintiffs who are the subject of this summary judgment motion.

▉▉▉ In their response to the summary judgment motion, appellants contend they have also raised a fact issue on the element of reliance in relation to Grant's silence in the face of its "duty to speak." *See American Tobacco Co. Inc.*, 951 S.W.2d at 436. If a duty to speak exists, the allegedly defrauded party must have reasonably relied on the silence to his detriment, just as with affirmative misrepresentations. *Id.* The duty to speak arises in a confidential relationship. *Formosa Plastics Corp., USA v. Presidio Engineers and Contractors, Inc.*, 941 S.W.2d 138, 147 (Tex.App.—Corpus Christi 1995),

*rev'd on other grounds*, 960 S.W.2d 41 (Tex. 1998). We do not have such a relationship here.

A duty to speak also arises in at least three other contexts. *Id.* When one voluntarily discloses information, he has a duty to disclose the whole truth. *State Nat'l Bank v. Farah Mfg. Co.*, 678 S.W.2d 661, 681 (Tex. App.—El Paso 1984, writ dism'd by agr.). When one makes a representation, he has a duty to disclose new information when he is aware the new information makes the earlier representation misleading or untrue. *Susanoil, Inc. v. Continental Oil Co.*, 519 S.W.2d 230, 236 n. 6 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). Finally, when one makes a partial disclosure and conveys a false impression, he has a duty to speak. *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 636 (Tex.App.—San Antonio 1993, writ denied). We do not find in the record any evidence of a circumstance indicating Grant had a duty to speak. None of the situations outlined above are applicable. There was no confidential relationship between Grant and appellants, no evidence of Grant's voluntary disclosure giving rise to a duty to disclose the whole truth, no new information conveyed by Grant which makes the earlier information misleading or untrue, no partial disclosure which conveys a false impression. Appellants did not raise a fact issue on the element of reliance in a "fraud by failure to disclose" action.

We conclude the trial court was correct in granting the partial summary judgment against the thirty-two plaintiffs as to those causes of action having reliance as an element—namely fraud, negligent misrepresentation, aiding and abetting fraud, and breach of warranty.

▉▉▉ We turn now to the element of causation in negligence, which Grant also seeks to negate in its motion for summary judgment.[18] According to Grant, "a plaintiff asserting an accounting negligence claim must show a causal link between the accountant's departure from the requisite standard of

---

18. The DTPA claims were disposed of in another summary judgment and, likewise, were disposed of by this opinion in the discussion of point of error six. Appellants are not consumers under the DTPA.

care and the plaintiff's damages." We find no fault with that conclusion. However, Grant's summary judgment evidence—the deposition excerpts—do not negate the element of causation in negligence. The mere fact that some investors had not heard of Grant, were unaware of any connection between Hillcrest and Grant, or had heard of Grant from someone else has no bearing upon whether Grant's conduct in some way caused appellants' damage. Grant's partial motion for summary judgment fails to negate the causation element in the negligence cause of action. The trial court was incorrect in granting partial summary judgment on the causation element in a negligence cause of action against the thirty-two plaintiffs. Point of error eight is overruled in part and sustained in part.

### LIMITATION GROUNDS—

### NEGLIGENCE, GROSS NEGLIGENCE, NEGLIGENT MISREPRESENTATION, AND BREACH OF FIDUCIARY DUTY

■ In point of error nine, appellants claim the trial court erred in granting appellee's motion for summary judgment on statute of limitations grounds regarding appellants' causes of action for negligent misrepresentation, negligence, gross negligence, and breach of fiduciary duty. Each of those causes of action has a two year statute of limitations.[19] Since appellants filed their suit against Grant on May 9, 1986, the accrual date of each cause of action cannot be earlier than May 9, 1984; otherwise, the causes are barred by limitations.

In its motion for summary judgment based on the investors' Fourth Amended Petition, Grant urges the discovery rule is not applicable, and the only matter at issue is the accrual date of the causes of action. According to Grant, any injury appellants may have sustained occurred when they invested their funds in Hillcrest in 1982 or 1983 or when Grant allegedly committed certain breaches of duty in those same years. If one adopts Grant's position, the various claims made the subject of this summary judgment are barred by limitations, since the accrual date would have been in 1982 or 1983, more than two years prior to May 9, 1986, the date suit was filed.

Taking a contrary position on the accrual date issue, appellants contend the causes of action accrued when they received notices of deficiency from the Internal Revenue Service beginning in 1985 and continuing until 1987. *See Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967); *Hoover v. Gregory,* 835 S.W.2d 668, 672 (Tex.App.—Dallas 1992, writ denied). If appellants are correct, their negligent conduct and fiduciary duty causes of action are not barred by limitations, since the accrual date would have been after May 9, 1984.

Alternatively, the investors argue that the causes of action are governed by the discovery rule and that they (the investors) did not discover any wrong committed by Grant until after June 24, 1985, when "certain plaintiffs learned from a Hillcrest representative that [Edward] Markowitz had pleaded guilty to a criminal information alleging violations of criminal tax statutes involving fraudulent transactions."[20] We conclude the discovery rule applies in this context.

■ In general, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996). This rule is often referred to as the "legal injury rule." *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex. 1997) The legal injury rule, however, has not

---

**19.** *See Gillespie v. Fields,* 958 S.W.2d 228, 230 (Tex.App.—Tyler 1997, writ denied) (gross negligence); *Jim Arnold Corp. v. Bishop,* 928 S.W.2d 761, 768 (Tex.App.—Beaumont 1996, no writ) (breach of fiduciary duty); *Cornerstones Mun. Util. Dist. v. Monsanto Co.,* 889 S.W.2d 570, 575 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (negligence); *Texas American Corp. v. Woodbridge Joint Venture,* 809 S.W.2d 299, 302 (Tex.App.—Fort Worth 1991, writ denied) (negligent misrepresentation).

**20.** Edward Markowitz was a dealer who purportedly was making trades of government securities for Hillcrest. Such trades, according to appellants, never occurred.

been applied without exception—that exception being the discovery rule.[21]

■■■■ In applying the discovery rule, the Texas Supreme Court has, under certain circumstances, held that an action does not accrue until the plaintiff knows, or in the exercise of reasonable diligence, should have known of the wrongful act and resulting injury. *S.V.*, 933 S.W.2d at 4. "This exception ... applies in cases of fraud and fraudulent concealment, and in other cases in which 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.'" *Murphy*, 964 S.W.2d at 270 (quoting *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996)). To be inherently undiscoverable, an injury need not be absolutely impossible to discover. Otherwise, suit would never be filed and the question of whether to apply the discovery rule would never arise. *Id.* An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence. *Id.*

Holding that accounting malpractice involving tax advice is inherently undiscoverable, the Texas Supreme Court in *Murphy* expressly applied the discovery rule in the accounting context. Unlike the instant case, however, the specific facts in *Murphy* reveal an accountant/client relationship, which is not present here. The record shows that Grant was an accountant/auditor for Hillcrest, not the investors. The investors' status is that of third parties who claim to have relied on representations made by Grant in the course of services it provided to its client, Hillcrest.

In that respect, the circumstances in the instant case are similar to those in *Brown v. KPMG Peat Marwick*, 856 S.W.2d 742 (Tex. App.—El Paso 1993, writ denied), wherein non-client third parties sued an auditor/accountant whose audit failed to disclose related party transactions. Although agreeing that liability may be imposed upon an auditor for such cause of action as negligence, regardless of a privity relationship, the El Paso court held broadly that the discovery rule does not toll limitations in a suit filed against an auditor by a non-client who charges negligence in the performance of an audit. *Id.* at 748–49. As we appreciate it, the basis for its holding was justice and policy considerations behind the statute of limitations. *Id.* at 748.

■■■ We do not agree with the court's blanket holding in *Brown* and instead conclude the discovery rule applies in actions involving negligence, gross negligence, negligent misrepresentation, and breach of fiduciary duty against accountants even when the claims are raised by non-client third parties. As pointed out by the Supreme Court in *Murphy*, an accounting malpractice claim involving tax advice to a client is inherently undiscoverable, and the injury is objectively verifiable. *Murphy*, 964 S.W.2d at 270. In the context of our facts, we conclude the third party's (the investors') actions against the auditor/accountant Grant is no different. As with a client in the accountant/client context, it is most unlikely that an investor would know that representations about an investment program allegedly made, or authorized to be made, by an auditor/accountant in a brochure, prospectus, or tax opinion were false or misleading at the time of investment. Otherwise, the investors would not have invested. Because we find the accounting negligence and breach of fiduciary claims under these circumstances to be inherently undiscoverable, we conclude the discovery rule applies. *See Sutton v. Mankoff*, 915 S.W.2d 152, 157 (Tex.App.—Fort Worth 1996, writ denied) (applying discovery rule); *Ponder v. Brice & Mankoff*, 889 S.W.2d 637, 641–42 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (applying discovery rule).

■■■ A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *Velsicol Chemical Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997). Specifically, the movant must (1) conclusively prove when the cause of action accrued and (2) negate the discovery rule by proving as a matter of law there is no genuine issue of fact concerning when the plaintiffs discovered or should have discovered the nature of

---

**21.** For a discussion of the various settings in which the Texas Supreme Court has applied the discovery rule, see *S.V. v. R.V.*, 933 S.W.2d 1, 5 (Tex.1996).

the injury. *See Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *DeWoody v. Rippley*, 951 S.W.2d 935, 947 (Tex.App.—Fort Worth 1997, writ dism'd by agr.). Thus, Grant, as the summary judgment movant, had the burden (1) of showing when appellants' causes of action accrued in light of the discovery rule and (2) of proving as a matter of law that the investors failed to file suit within the applicable statute of limitations. If the movant establishes that the statute of limitations bars the action as a matter of law, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d 587, 589 (Tex.App.—Corpus Christi 1994, no writ).

The only summary judgment proof submitted by Grant as to the accrual of the causes of action consists of two deposition excerpts of Randal Hendricks and the affidavit of Grant partner, John Latta, with attachments thereto. Hendricks' first deposition excerpt is a single page which Grant apparently submitted for the purpose of showing that the appellants who invested in 1984 had also invested in 1982 or 1983. Hendricks states, "I think the only people that we asked were the people that were in '82 or '83." In the second deposition excerpt, consisting of two pages, Hendricks remarks, "[A]ctually I think there was no one in '84 that wasn't in '83. So there were some in '83 who did not get into '84. Now, that's not confusing to me, but it's pretty complicated." Latta's affidavit, based in part on information and belief, disavows any contact or communication between Grant and the investors and further avers that the 1982 tax memoranda Grant prepared for Hillcrest regarding the Hillcrest program was not to be shown to or relied upon by investors.

Grant's summary judgment evidence makes no attempt to negate the discovery rule as pleaded by appellants. Instead, the evidence, as we appreciate it, purports to establish the statute of limitations began running at the time of investment, which, according to Grant, was prior to 1984 for all

plaintiffs. That evidence is not directed at appellants' claim that they did not discover the injury until 1985. We conclude appellee did not meet its summary judgment burden. Even if the discovery rule does not apply, the summary judgment evidence still does not conclusively establish when the causes of action accrued; nor does it conclusively negate appellants' invocation of the discovery rule. Accordingly, the trial court erred in granting summary judgment on statute of limitations grounds on the causes of action for negligent misrepresentation, negligence, gross negligence, and breach of fiduciary duty. Point of error nine is sustained.

## SECURITIES LAWS CLAIMS

### SECURITIES ACT OF 1933 § 12(1)(2)

Grant filed four motions for summary judgment on appellants' securities laws claims; on appeal, the investors challenge two of the four.[22] In point of error ten, the investors claim the trial court erred in granting on limitation grounds the summary judgment regarding the § 12(1) and § 12(2) claims under the Securities Act of 1933. 15 U.S.C. § 77*l* (a)(1),(2) (1997). Grant's motion urges two distinct reasons as the basis for its claim that the statute of limitations barred the § 12 claims. The trial court's order on the summary judgment gives no indication which of the two grounds was the basis of its ruling.

We note at the outset that appellants' brief contains no argument on § 12(1); instead, their argument is restricted to the § 12(2) claim. Because of the absence of any argument on appeal regarding the § 12(1) claim, appellants have waived any point of error that the summary judgment on that claim was improper. *See* TEX.R.APP. P. 74(f) (now TEX.R.APP. P. 38.1(h)); *Howell v. Murray Mortgage Co.*, 890 S.W.2d 78, 81 (Tex.App.—Amarillo 1994, writ denied).

██ In its summary judgment motion, Grant urges that the § 12(2) claim was time barred because of the running of limitations between the filing of the Fourth and Fifth Amended Petitions. After having included it

**22.** Appellants have not challenged on appeal the summary judgments obtained by Grant on the

Securities Act of 1933 § 17 and § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5.

in previous petitions, appellants omitted the § 12(2) claim in the Fourth Amended Petition and then pleaded it once again in the Fifth. Grant argues that when a cause of action is dismissed or abandoned, the statute of limitations begins to run until it is again repleaded. *Berry v. Humble Oil and Refining Co.*, 205 S.W.2d 376, 385–86 (Tex.Civ. App.—Waco 1947, writ ref'd n.r.e.). Therefore, under the facts in this case, the claim would be barred by limitations. We, however, follow a contrary holding of the Texas Supreme Court in *American Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830–831 (Tex.1994), in what we perceive to be an analogous situation. There, two plaintiffs in a multi-party, multi-cause of action suit were dropped from an amended petition but were renamed in a later petition. During the interim between the petitions, argued America Petrofina, limitations ran. The Texas Supreme Court stated that in such a circumstance "the burden should be placed on the defendant to complain of an omission in the plaintiff's pleadings necessary to invoke the court's jurisdiction and prevent the running of limitations." *Id.* at 831. "[D]efendants [*i.e.*, American Petrofina] presented no summary judgment evidence that they were prejudiced in any way by the omission and renaming of [plaintiff].... Consistent with that provision, [plaintiff's] claim relates back and is, therefore, not time barred." *Id.*

We find *American Petrofina* instructive in the instant case. Although the issue before us is the omission of a cause of action rather than a party, we conclude the same principles apply. Grant has not demonstrated in summary judgment evidence that it has been prejudiced by the omission and repleading of the § 12(2) claim. Furthermore, we find the pleading of the federal securities claim relates back to the same transaction or occurrence as the previous timely-filed claims. Consequently, the federal securities claims are not time barred on those grounds.

We turn now to the question of whether the specific statute of limitations in 15 U.S.C. § 77*m* (1997) bars appellants' § 12(2) claim. Section 12(2) claims must be brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence. In no event shall any action be brought to enforce a liability created under section 77*l*(2) [§ 12(2)] of this title more than three years after the sale. *See* 15 U.S.C. § 77*m* (Section 13 of the Securities Act of 1933).

Section 13 requires reasonable diligence, that is, an action must be commenced within one year after the investor either knew or should have known of the false or misleading communication. The one-year limitations period "does not 'commence only when a plaintiff has full knowledge of the existence of a claim. On the contrary, [it] begins to run even when a plaintiff is placed on "inquiry notice" of possible misrepresentations.'".... The First Circuit in *Cook v. Avien, Inc.*, 573 F.2d 685 (1st Cir.1978) has referred to the circumstances constituting "'inquiry notice'" as "storm warnings" such that a reasonable person would be alerted to the possibility of material omissions or misleading information provided....Thus, a plaintiff "may not ignore 'storm warnings' which would alert a reasonable investor to the possibility of fraud."

*Davidson v. Wilson*, 973 F.2d 1391, 1402 (8th Cir.1992) (footnote omitted) (citations omitted).

A plaintiff in a federal securities case will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud. *Dodds v. Cigna Secs., Inc.*, 12 F.3d 346, 350 (2nd Cir.1993). When the circumstances would suggest to an investor of ordinary intelligence the probability that he had been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry. *Id.* Such circumstances are often analogized to "storm warnings." *Id.* "Storm warnings" of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner and his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud. *Cooperativa de Ahorro v. Kidder, Peabody & Co.*, 129 F.3d 222, 224 (1st Cir.1997). Under Sec. 13,

"even if a victim does not actually know of a misrepresentation, the one-year limitation period begins to run when the victim should have discovered the misrepresentation through the exercise of reasonable diligence." *Great Rivers Co–op. of S.E. Iowa v. Farmland Indus.*, 120 F.3d 893, 896 (8th Cir.1997). This objective standard is commonly referred to as the doctrine of "inquiry notice." *Id.* It is a different standard than that employed for the discovery rule under Texas law where the movant in a summary judgment must conclusively negate the discovery rule. *See Velsicol Chemical Corp.*, 956 S.W.2d at 530. The issue before us then is whether appellants have raised a fact issue as to whether they were placed on "inquiry notice" regarding the § 12(2) claims.

Grant urges in its summary judgment motion that the § 12(2) claim was barred by the one year discovery provision of § 77*m* before appellants sued Grant on May 9, 1986. In their Fifth Amended Petition, appellants pleaded they did not discover Grant's alleged wrongdoing "until after June 24, 1985, when certain Plaintiffs learned from a Hillcrest representative that Markowitz had pleaded guilty to criminal information alleging violations of criminal tax statutes involving fraudulent transactions." Taking issue with that claim, Grant's motion urges that appellants knew of Markowitz's *agreement* to plead guilty "long before that, in May 1984." As summary judgment evidence, Grant submits a WALL STREET JOURNAL article, dated May 10, 1984, as well as the affidavit of Randal Hendricks, who admitted in both an interrogatory answer and in his deposition that in May 1984 he received a WALL STREET JOURNAL article, which reported Markowitz had agreed to plead guilty to fraud and tax evasion charges. In his deposition, Hendricks testified he did not send the article to appellants. We do not impute Hendricks' knowledge of the article to appellants.

Also attached as summary judgment evidence by Grant is a letter from Hillcrest "to all clients of Hillcrest Securities Corporation, Inc." Dated May 11, 1984, Hillcrest's letter advises its clients that it was named in the May 10, 1984, article as a company trading securities with entities owned or controlled by Edward A. Markowitz, who was "prepared to plead guilty" to tax fraud. Enclosed with the letter was a copy of the WALL STREET JOURNAL article. The letter and the article raise definite questions about Markowitz and the safety of Hillcrest investments in general, as well as the specter of securities fraud.

According to Grant, the WALL STREET JOURNAL article put appellants on notice of the possibility that something was amiss with their Hillcrest investments. We do not agree the article alone was enough to do so. However, the Hillcrest letter to all its clients and the enclosed WALL STREET JOURNAL article were sufficient to put appellants on "inquiry notice" in May 1984 of possible misrepresentations regarding Hillcrest investments, concerning which appellants had a duty to use reasonable diligence to discover. The letter and article both point to an accounting firm which stated the trades had been verified; such remarks by accountants in the face of charges regarding irregularities in Hillcrest securities should have raised questions concerning the accountants' role in the alleged securities fraud. In May 1984 appellants had "storm warnings" of fraud and, in the exercise of due diligence, were "obliged to do something more than sit on [their] hands." *Cooperativa de Ahorro*, 129 F.3d at 225. Based on the letter and the article, appellants had sufficient information to trigger the duty to investigate whether trades allegedly verified by accountants had actually been verified and whether their Hillcrest investments were lost. As "storm warnings," the information in the letter and article triggered the duty to exercise due diligence to determine whether Grant and Hillcrest were involved in fraud. We further conclude that with the exercise of reasonable diligence a reasonable person would have acquired actual notice of Grant's alleged misrepresentations.

Appellants did not submit summary judgment evidence raising a fact issue on the matter of "inquiry notice" or reasonable diligence. We conclude the summary judgment evidence demonstrates appellants had inquiry notice shortly after receiving Hillcrest's letter and the attached WALL STREET JOUR-

NAL article in May 1984. The statute of limitations under § 77m is one year after the investors discovered or should have discovered the false or misleading information. Since suit was not filed against Grant until May 1986, the § 12(2) claims are time barred. We, therefore, conclude the trial court did not err in granting summary judgment on Grant's § 12(2) claim, as well as its § 12(1) claim. Point of error ten is overruled.

### TEXAS SECURITIES ACT § 33(A)

### SECURITIES ACT OF 1933 § 12

 In two points of error, the investors challenge another summary judgment granted in favor of appellees on securities law claims. In points of error thirteen and fifteen, appellants urge two reasons the trial court erred in granting summary judgment under § 33(A) of the Texas Securities Act and § 12 of the Securities Act of 1933. First, according to appellants, Grant obtained a summary judgment without obtaining a ruling on special exceptions to appellants' claim. Second, appellants contend the trial court erred by granting summary judgment on issues not raised by the summary judgment motion. Neither reason advanced by appellants has merit.

The basis for the particular summary judgment made the focus of points thirteen and fifteen is that Grant was not a "seller" pursuant to federal or state securities laws and, thus, cannot be liable under those statutes. Under §§ 12(1) and 12(2) of the 1933 Act, the defendant who "offers or sells a security" may be liable to "the person purchasing such security from him." 15 U.S.C. 77l. Similarly, under § 33A(2) of the Texas Securities Act, a "person who offers or sells" a security may be liable to the "person buying the security from him" for certain acts or omissions. In attempting to demonstrate that Grant was not a "seller" under federal and state law, Grant sought to negate an element of the state and federal causes of action. The motion did not challenge the sufficiency of the investors' pleadings.

 In general, it is improper to grant summary judgment on a deficient pleading's failure to state a cause of action when the deficiency can be attacked through special exceptions. *Kehler v. Eudaly*, 933 S.W.2d 321, 325 (Tex.App.—Fort Worth 1996, writ denied). Summary judgment should not be based on a pleading deficiency that might be cured by amendment. *Saenz v. Southern Union Gas Co.*, 916 S.W.2d 703, 705 (Tex.App.—El Paso 1996, writ denied). Here, Grant did not move for summary judgment on the pleadings or otherwise allege that appellants failed to state a cause of action. Rather, Grant moved for summary judgment on the ground that it was not a "seller" within the meaning of the federal and state acts. Thus, the trial court did not grant summary judgment because of a failure to state a cause of action. In these circumstances, the law does not require Grant to file special exceptions. *See Gonzales v. American Postal Workers Union, AFL–CIO*, 948 S.W.2d 794, 799 (Tex.App.—San Antonio 1997, writ denied). The trial court did not err in granting the summary judgment without first requiring Grant to file special exceptions. Point of error thirteen is overruled.

The investors allege in point of error fifteen that the trial court erred in granting summary judgment on an issue not raised in the motion. As we appreciate their claim on appeal, the investors contend this summary judgment was granted on a § 33(F) ground, which was not raised in this particular motion for summary judgment. In reality, however, the summary judgment in question was granted under § 33(A) of the Texas Securities Act and § 12 of the Securities Act of 1933. Again, we note that Grant's motion is based solely on the issue of whether Grant is a "seller" under those acts. Nowhere does the motion seek summary judgment on a § 33(F) violation for aiding and abetting fraud under the Texas Securities Act.[23] The February 7, 1996, order granting this particular summary judgment specifically states

---

23. The aiding and abetting fraud claim under § 33(F) was included in Grant's summary judgment motion for fraud-related claims which was granted, along with five other summary judgments, on February 7, 1996.

the judgment was on § 12 of the Securities Act of 1933 and § 33(A) of the Texas Securities Act. The court did not grant summary judgment on grounds not raised by the motion. Consequently, point of error fifteen is overruled.

## SUMMARY JUDGMENTS ON CONTRACT, WARRANTY, AND FIDUCIARY DUTY–RELATED CLAIMS

In point of error eleven, appellants claim the trial court erred in granting appellee's motion for partial reconsideration of a previously denied motion. In 1989 Grant filed its original summary judgment motion which the trial court denied. Later, the accounting firm filed a motion asking the court to reconsider the previously denied motion. Specifically, Grant requested reconsideration of four of the six causes of action on which it had sought summary judgment in its first motion—those four being contract, warranty, fiduciary duty, and securities claims.

We note at the outset that the focus of the investors' brief on appeal, at least regarding the fiduciary duty cause of action, is the limitations claim; we have already concluded in this opinion that limitations do not bar the breach of fiduciary duty claim. However, the investors do not challenge the issue of whether Grant is actually a fiduciary either in point of error eleven or any other point. Consequently, the partial summary judgment on the breach of fiduciary duty claim stands. We also do not find in appellants' brief any argument or authorities regarding appellants' contract claim; it too stands. The contract claim is not argued on appeal; the fiduciary duty claim is presented only in the context of a limitations argument previously considered in this opinion; and the securities claims are not addressed in point of error eleven. Therefore, we confine ourselves in our analysis of this point to the breach of warranty claims.

### Breach of Warranty Claims

In their brief on appeal, appellants contend (1) Grant never expressly challenged appellants' breach of warranty claims in its motion for summary judgment; and (2) Grant never obtained a ruling on special exceptions before seeking summary judgment. The first motion for summary judgment contains no grounds regarding any warranty claims, but a breach of express warranty ground is contained in a supporting memorandum, which is specifically incorporated into the motion. The trial court denied the motion. In 1990, Grant filed a motion for *partial* reconsideration of that initial motion. As noted above, the reconsideration is limited to the appellants' contract, fiduciary duty, and securities claims. Contained in the body of that motion is a breach of contract section in which Grant makes reference to warranty claims and again contends the investors' warranty claims against Grant do not exist in Texas. At the conclusion of the motion for reconsideration, the prayer requests summary judgment only on the contract, fiduciary duty, and securities law claims.

In 1995 Grant filed a "request for a ruling" on the motion for partial reconsideration. In its "request," Grant again urges summary judgment on causes of action for implied warranty, breach of fiduciary duty, and contract claims. In that "request" for a ruling," Grant contends, among other things, that Texas law recognizes no breach of implied warranty of professional services. The court's order granting summary judgment recites that the "Motion for Partial Reconsideration ... related to plaintiffs' claims against Grant Thornton for breach of contract, breach of warranty, and breach of fiduciary duty is granted."

Appellants argue that since Grant did not challenge appellants' breach of warranty causes of action in Grant's original motion for summary judgment, the trial court erred in granting the motion for partial reconsideration. Merely attaching the argument in a supporting brief, appellants argue, is insufficient. That is correct. A motion for summary judgment must itself expressly present the grounds upon which it is made, and must stand or fall on these grounds alone. *Science Spectrum Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex.1997); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). In determining whether grounds are expressly presented, we may not rely on briefs or sum-

mary judgment evidence. *Id.* However, we conclude that having incorporated the supporting memorandum into its original motion and having continued to urge the warranty grounds in succeeding motions or amendments asking for reconsideration and requesting a ruling, Grant has adequately raised the warranty ground and it is before us on appeal.[24]

■ Regarding the breach of warranty claim, the two grounds upon which Grant urges summary judgment are (a) the failure of the investors to plead breach of warranty and (b) the non-existence of a breach of warranty cause of action in Texas against accountants. As to the first ground, appellants did plead breach of warranty in their Fourth Amended Petition; consequently, Grant's allegation in that regard is unfounded. Grant's second ground, which is essentially a claim that appellants' pleadings fail to state a cause of action, however, has merit.

■ As a general rule, it is improper to grant summary judgment on a pleadings's failure to state a cause of action when the deficiency can be attacked through special exceptions. *Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9–10 (Tex.1974). Summary judgment should not be based on a pleading deficiency that might be cured by amendment. *Saenz,* 916 S.W.2d at 705. Before a court may grant a "no cause of action" summary judgment, it must give the parties an adequate opportunity to plead a viable cause of action. *Friesenhahn v. Ryan,* 960 S.W.2d 656, 659 (Tex.1998).

Appellants contend on appeal that Grant should have obtained a ruling on special exceptions before moving for summary judgment on the warranty claim. Grant counters by pointing out that the investors "sa[id] *not*

*a word* about special exceptions," and further concludes that appellants have waived the argument on appeal. Grant, however, is incorrect. In their final response to the motion for reconsideration, appellants specifically objected to Grant's summary judgment ground of failure to state a claim and urged that, in failing to first obtain a ruling on special exceptions, Grant had followed the wrong procedure.[25] The record reveals the investors raised the issue at the trial court level, and they have briefed the issue on appeal.

■ A party is not required to file exceptions to point out another party's pleadings deficiencies if the repleading would be futile. The Texas Supreme Court in *Friesenhahn* confirmed the settled Texas rule that, even without a ruling on special exceptions, "[s]ummary judgment may also be proper if a pleading deficiency is of the type that could not be cured by an amendment." *Id.* at 658. In a recent case involving a suit against accountants, the Texas Supreme Court specifically held there is no cause of action for breach of implied warranty of professional services in Texas. *Murphy,* 964 S.W.2d at 268. Since Texas law does not recognize an implied warranty for professional services against accountants, Grant is entitled to summary judgment on the warranty claim. The trial court did not err in failing to rule on special exceptions before granting the summary judgment. Point of error eleven is overruled. Points of error three, four, and five, insofar as they apply to breach of warranty, are overruled.

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

■ Appellants' point of error twelve claims the trial court erred in granting appel-

24. In its order granting the summary judgment, the trial judge stated that he had reviewed the motions, the supporting briefs, and summary judgment evidence filed by Grant, the responses to each motion, controverting summary judgment evidence, and other specified materials.

25. We note that appellants' final response was filed six days before the hearing and was, therefore, untimely under Tex.R. Civ. P. 166a(c). Generally, if the non-movant fails to obtain the trial court's written permission to file a late response and the record does not contain some indication

the trial court granted leave to file it, the nonmovant waives the issue for appeal. *See Goswami v. Metropolitan S. & L. Ass'n,* 751 S.W.2d 487, 490 n. 1 (Tex.1988); *Waddy v. City of Houston,* 834 S.W.2d 97, 101 (Tex.App.—Houston [1st Dist.] 1992, writ denied). However, in this instance, the trial court's order granting the summary judgment specifically states the trial judge reviewed the investors' responses. We conclude, therefore, the record indicates the trial court permitted the late response.

**372**

lee's summary judgment on the investors' cause of action for aiding and abetting a breach of fiduciary duty of another. Challenging each ground urged by Grant in its motion, the investors first contest Grant's claim in its motion for summary judgment that the cause of action was previously disposed of in the court's earlier ruling on the partial reconsideration motion which granted summary judgment on appellant's breach of fiduciary duty claim. Another earlier ruling granted summary judgment on the breach of fiduciary duty on limitation grounds. According to Grant, the aiding and abetting breach of a fiduciary duty is simply a "tag-along" claim to appellants' breach of fiduciary duty claim against Grant and, thus, was disposed of by the earlier ruling. We do not agree. The summary judgment on the breach of fiduciary duty claim is not tantamount to a ruling on the aiding and abetting claim. The claims are distinct.

Hand in hand with the contention that the aiding and abetting claim is merely a "tag-along" claim is Grant's assertion that Texas law does not recognize a cause of action for aiding and abetting a breach of fiduciary duty of another. Again, we disagree. "It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 514 (1942); *Kline v. O'Quinn,* 874 S.W.2d 776, 786 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Horton v. Robinson,* 776 S.W.2d 260, 266 (Tex.App.—El Paso 1989, no writ); *Herider Farms–El Paso, Inc. v. Criswell,* 519 S.W.2d 473, 477 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.). Consequently, there is no merit to Grant's claim under that ground.

Still another ground on which Grant bases this motion for summary judgment is the limitations defense. Grant's motion declares plaintiffs' aiding and abetting breach of fiduciary duty of another claim is time-barred as a matter of law by the applicable two year statute of limitations. Although no evidence is offered in the motion on that

claim, Grant does refer in a footnote (and incorporates the material listed therein) to the earlier summary judgment motion on negligence and fiduciary duty and a subsequent reply memorandum by Grant. The ground of that previous motion was limitations. In reviewing the evidence attached to the earlier motion and applying it to Grant's motion for aiding and abetting a breach of fiduciary duty, we employ the same reasoning as was expressed in our discussion of limitations in point of error nine. The discovery rule applies, and Grant has failed to negate it. The claim is not time-barred.

Grant also alleges in its motion for summary judgment on aiding and abetting fiduciary duty of another that the cause of action fails on the merits as a matter of law. By footnote, appellee incorporates its motion for summary judgment on fraud, aiding and abetting fraud, and conspiracy claims, the supporting brief, and the attached exhibits. However, Grant offers no explanation or argument in its motion for summary judgment or in its brief on appeal as to how the fraud-related summary judgment motion or its evidence applies to the instant one. Grant has not established its assertion in its footnote that the aiding and abetting breach of fiduciary duty claim fails on the merits as a matter of law. Since Grant presents no additional evidence or argument than that offered in its footnote, and since we consider that insufficient, we sustain point of error twelve.

In point of error fourteen, appellants claim the trial court erred in refusing to rule on their objections to Grant's summary judgment motions and evidence. TEX.R.APP. P. 74(f) requires a brief to contain a clear and concise argument for the contentions made, with appropriate citations to the authorities and to the record. Appellants have provided no authorities nor supporting arguments regarding point of error fourteen. *See* TEX. R.APP. P. 74(f); *Maranatha Temple, Inc. v. Enterprise Products Co.,* 893 S.W.2d 92, 106 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Point of error fourteen is overruled.

In points of error one and two, appellants contend the trial erred in granting summary judgment, because it applied the wrong pro-

cedure and standard of review. We overrule both points. There is nothing in the record before us which affirmatively shows the trial court engaged in any improper summary judgment procedures or review. On the face of the record, it appears the trial court properly considered the pleadings and summary judgment evidence before it and made its rulings. Whether those rulings are correct or incorrect is for us to decide; and we have done so. We overrule points of error one and two.

### GRANT'S CROSS–POINT

In its cross point on appeal, Grant contends the trial court erred in granting the two motions for summary judgment filed by the Hendricks brothers. In 1994 Grant filed its answer to appellants' Fourth Amended Petition and included therein a counterclaim (in effect, a third party action) against the Hendricks brothers for contribution and/or indemnity in the event Grant was found to be liable to appellants. In response, the Hendrickses filed a motion for partial summary judgment on limitation grounds against Grant's counterclaim for contribution/indemnity under the Texas Securities Act. Later, the Hendrickses filed a second summary judgment motion on the remaining contribution counterclaims on other grounds. The trial court granted both motions in favor of the Hendricks brothers.

Grant claims the trial court erred in granting the summary judgments on their contribution counterclaims and petitions us to reinstate the counterclaims on remand in the event we reverse any of the summary judgments obtained by Grant against appellants. By virtue of our holding in this opinion, that eventuality has occurred.

In considering the summary judgments on Grant's contribution claims, we note that Texas has five possible contribution schemes:

(1) the original contribution statute, formerly Art. 2212, now codified at TEX. CIV.

PRAC. & REM.CODE ANN. § 32.001 et seq (Vernon 1997);

(2) the comparative negligence statute, formerly Art. 2212a, now codified at TEX. CIV. PRAC. & REM.CODE ANN § 33.001 et seq. (Vernon 1997);

(3) the common law contribution by comparative causation scheme adopted by the Texas Supreme Court in *Duncan v. Cessna*, 665 S.W.2d 414, 429 (Tex.1984)

(4) Sec. 33.001 et seq. as amended in 1987 by "tort reform" legislation; [*See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 et seq. (Vernon Supp.1988) ]

(5) Sec. 33.001 et seq. as amended in 1995 (the comparative responsibility statute).

The instant case falls within the original contribution scheme in TEX. CIV. PRAC. & REM. CODE ANN. § 32.001 et seq.[26]

■ The general rule in Texas is that a claim for contribution and indemnity accrues only when payment is made or judgment is rendered. *Conroe Truck & Tractor, Inc. v. Childs Truck Equipment, Inc.*, 723 S.W.2d 207 (Tex.App.—Beaumont 1986, writ ref'd n.r.e.); *Amoco Chemicals Corp. v. Malone Service Co.*, 712 S.W.2d 611 (Tex.App.— Houston [1st. Dist.1986], no writ); *Beaumont Coca Cola Bottling Co. v. Cain*, 628 S.W.2d 99 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.). The Texas Supreme Court held that a party may seek contribution when a judgment is entered finding that party to be a joint tortfeasor, and when such party makes a subsequent payment of a disproportionate share of the common liability; therefore, the right to contribution is predicated upon a legally enforceable judgment. *See Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 21 (Tex.1987); *Trussway, Inc. v. Wetzel*, 928 S.W.2d 174, 178 (Tex.App.—Beaumont 1996, writ denied). In the present posture of the case, there is no judgment against Grant. Although we have sustained some of appellants' points of error and reversed and re-

---

**26.** Since it was filed before the effective date of the comparative responsibility statute, Chapter 33 is clearly not applicable. Because the comparative negligence statute applies to cases in which negligence is the only theory involved, the comparative negligence statute (former § 33.001) is likewise inapplicable. *Stewart Title Guar. Co.*

*v. Sterling*, 822 S.W.2d 1, 6 (Tex.1991). The common law scheme in *Duncan* does not apply because it was created for products liability suits. *Id.*; *Duncan*, 665 S.W.2d at 429. This case, having been filed against Grant in 1986 and having assorted causes of action, falls under the original contribution statute in § 32.001.

manded some of the summary judgments obtained by Grant, there still is no liability finding and no judgment against Grant. The trial court was premature in granting the summary judgments of the Hendricks brothers on Grant's contribution claims, because a contribution cause of action has not yet accrued. Accordingly, Grant's cross point is sustained.

We, therefore, vacate the summary judgments in favor of the Hendrickses, reinstate Grant's contribution claims, reverse certain summary judgments granted in favor of Grant herein, and remand the case to the trial court for disposition in accordance with this opinion. Points of error one, two, three, four, five, six, ten, eleven, thirteen, fourteen, and fifteen are overruled. Points of error seven and eight are sustained in part and overruled in part. Points of error nine and twelve are sustained. Grant's cross point is likewise sustained.

In summation, the following summary judgments were erroneously granted, and the causes therein are remanded to the trial court:

1. Summary judgment on fraud-related claims (fraud, aiding and abetting fraud, conspiracy to defraud, and aiding and abetting fraud under § 33(F) of the Texas Securities Act) regarding verification of the trades, except as to the thirty-two appellants referenced in point of error seven on the causes of action for fraud, aiding and abetting fraud under the common law, and under Texas Securities Act § 33(F);

2. Summary judgment against the thirty-two appellants referenced in point of error seven on the negligence cause of action;

3. Summary judgment on negligence, gross negligence, and negligent misrepresentation, except as to the thirty-two appellants referenced in point of error seven on negligent misrepresentation;

4. Summary judgment on aiding and abetting breach of a fiduciary duty.

5. Two summary judgments on Grant's contribution claims.

We find no error in the trial court's granting of the following summary judgments:

1. Summary judgment on DTPA cause of action;

2. Summary judgment granted against the thirty-two appellants on those causes of action (fraud, negligent misrepresentation, aiding and abetting common law fraud, and breach of express warranty) having reliance as an element;

3. Summary judgment on §§ 12(1)(2) of the Securities Act of 1933 and § 33(A) of the Texas Securities Act;

4. Partial summary judgment on contract, warranty, and fiduciary duty.

In further summation, the following causes of action are still viable at the trial court level as a result of our disposition of the points of error herein:

negligence;

gross negligence;

negligent misrepresentation, except as to the thirty-two appellants referenced in point of error seven;

fraud in failing to verify trades, except as to the thirty-two appellants referenced in point of error seven;

aiding and abetting common law fraud in failing to verify trades, except as to the thirty-two appellants referenced in point of error seven;

civil conspiracy in failing to verify trades;

aiding and abetting fraud under Texas Securities Act § 33(F) in failing to verify trades; and

aiding and abetting breach of fiduciary duty.

We affirm in part, reverse in part, and remand.

Our journey through the labyrinthine maze of summary judgments is complete. With tongue in cheek, we are reminded of Charles Dickens' statement in *Bleak House* in 1853, *"Suffer any wrong that can be done you rather than come here!"*

AFFIRMED IN PART; REVERSED IN PART; REMANDED.